Entered on Docket
May 08, 2018
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED
MAY 07 2018
SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   NC-17-1064-STaB |
| MARSHA HOWARD, | Bk. No.   5:10-bk-52527 |
| Debtor. | |
| MARSHA HOWARD, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| DEVIN DERHAM-BURK, Chapter 13 Trustee, | |
| Appellee. | |

Argued and Submitted on January 25, 2018
at San Francisco, California

Filed – May 7, 2018

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Stephen L. Johnson, Bankruptcy Judge, Presiding

Appearances: Cathleen Cooper Moran of Moran Law Group, Inc. argued for appellant; Nanette Dumas argued for appellee.

Before: SPRAKER, TAYLOR and BRAND, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Chapter 13[1] debtor Marsha Howard appeals from an order granting in part and denying in part her counsel's supplemental fee application. After Howard received her chapter 13 discharge, her counsel, the Moran Law Group, Inc. ("Moran"), sought approval of fees and expenses incurred in litigating a dispute that arose after Howard completed her scheduled plan payments. The bankruptcy court approved the fees as reasonable and necessary, but sustained an objection from the chapter 13 trustee that Howard's obligation to pay such fees was discharged.

Howard contends that Moran's fees and costs were not administrative expenses discharged under the confirmed plan. We disagree. The fees fall within the statutory definition of administrative expense claims. They were awarded under § 330(a)(4)(B), and such fees are specifically covered by the administrative expense statute, § 503(b)(2). Alternately, Howard posits that, even if Moran's fees were administrative expenses, the Code permits their payment outside of the plan when the claimant agrees to such treatment. While this statement generally is correct, it does not help Howard here because Howard's chapter 13 plan did not provide for this treatment, and she never amended her plan to provide for such treatment.

Accordingly, we AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

**FACTS**

Howard commenced her chapter 13 case in March 2010. Shortly thereafter, Howard and her bankruptcy counsel, Moran, entered into a form Rights and Responsibilities Agreement ("RARA").[2] By entering into the RARA, Howard and Moran adopted as part of their agreement the bankruptcy court's "guidelines" for debtors' legal representation in chapter 13 cases, "[u]nless the Court orders otherwise. . . ." RARA (April 29, 2010) at p. 1. Among other things, the RARA fixed Moran's initial compensation for certain basic chapter 13 legal services at $6,500 and further set forth a schedule of presumptive fees for additional services as might be necessary. The RARA also provided:

> if the above fees ordered by the court are not sufficient to compensate the attorney for the legal services rendered and costs incurred in the case, the attorney further agrees to apply to the court for approval of such fees and costs. . . . Fees shall be paid through the plan unless otherwise ordered. **The attorney may not receive fees directly from the debtor other than the initial retainer**.

Id. (emphasis added).

The bankruptcy court confirmed Howard's first amended chapter 13 plan ("Amended Plan") in December 2010. The Amended Plan was for the maximum term of five years and was derived from the bankruptcy court's April 2006 Model Chapter 13 Plan. It required the trustee to pay all allowed administrative expenses

---

[2] The RARA was not included in the parties' excerpts of record. However, we reviewed the RARA and other bankruptcy court documents not included in the excerpts of record by accessing them on the bankruptcy court's electronic docket. We can take judicial notice of their contents. Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC), 481 B.R. 34, 37 n.4 (9th Cir. BAP 2012).

3

in deferred payments over the life of the plan.[3]  The plan included as administrative expenses "initial" attorneys' fees in the amount of $6,500.

In December 2015, Howard made her final regular plan payment under the Amended Plan.  As required by Rule 3002.1(f), the chapter 13 trustee filed and served a notice of final cure payment on Howard's mortgage holder, PNC Bank.[4]  In response, PNC Bank claimed that Howard was delinquent on her mortgage obligations.  Over the next several months, Moran filed a series of motions on Howard's behalf.  Moran successfully precluded PNC Bank from introducing evidence of alleged outstanding escrow advances under Rule 3002.1(i)(1) and was awarded fees and costs incurred in this matter under Rule 3002.1(i)(2).[5]  Moran

---

[3] By order entered January 25, 2013, the bankruptcy court confirmed a modified plan at Howard's request.  The plan modifications are not relevant to our analysis and resolution of this appeal.

[4] Rule 3002.1(f) provides in part:

**(f) Notice of final cure payment**

Within 30 days after the debtor completes all payments under the plan, the trustee shall file and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim. The notice shall also inform the holder of its obligation to file and serve a response under subdivision (g).

[5] Rule 3002.1(i) provides:

**(i) Failure to notify**

If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g)
                                                    (continued...)

4

separately obtained a determination that Howard was current on her PNC Bank mortgage obligations under Rule 3002.1(h). However, the bankruptcy court denied Howard's request that PNC Bank pay the balance of Moran's fees and costs arising from the motion under Rule 3002.1(h) because that subdivision does not provide for the recovery of attorneys' fees.[6] The bankruptcy court entered its final order disposing of the dispute between Howard and PNC Bank on August 15, 2016. Neither Howard nor Moran appealed these orders.

    A month later, on September 14, 2016, the chapter 13 trustee requested entry of a chapter 13 discharge order. The bankruptcy court entered the discharge order that same day.

    Roughly a month *after* entry of Howard's discharge, Moran

---

[5](...continued)
of this rule, the court may, after notice and hearing, take either or both of the following actions:

    (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

    (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

[6] Rule 3002.1(h) provides:

**(h) Determination of final cure and payment**
On motion of the debtor or trustee filed within 21 days after service of the statement under subdivision (g) of this rule, the court shall, after notice and hearing, determine whether the debtor has cured the default and paid all required postpetition amounts.

5

filed a supplemental fee application for approval and payment of $5,590 in fees and $224.07 in expenses incurred between June 6, 2016 and November 24, 2016.[7] These fees were primarily the unpaid balance owed for Moran's work on the Rule 3002.1(h) motion but included a small amount for preparation of the fee application. The application sought to recover these fees directly from Howard outside of the bankruptcy case.

The chapter 13 trustee did not oppose the amount or the reasonableness of the supplemental fees and expenses sought, but she did oppose payment of those fees and expenses. She asserted that the Amended Plan provided for the payment of Howard's attorneys' fees and costs as administrative expenses in deferred payments over the life of the plan. According to the trustee, the plan treatment was binding even if the supplemental fees and expenses had not actually been paid through the Amended Plan. She further contended that, in light of the entry of Howard's discharge, the bankruptcy court could not authorize Moran to collect the supplemental fees and expenses directly from Howard.

At the hearing on the supplemental fee application, the chapter 13 trustee focused on the fact that a month had passed between the conclusion of Howard's dispute with PNC Bank and the entry of the discharge order. The trustee maintained that Moran should have filed its supplemental fee application before entry of the discharge order.

---

[7] Though the supplemental fee application was filed on October 10, 2016, it included estimated fees for appearance at the hearing on the fee application and drafting a final fee order.

6

According to Moran, the fees incurred litigating against PNC Bank were not an administrative expense because they were incurred after completion of payments under the Amended Plan. Moran also noted that the Amended Plan could not be modified to provide for payment of the supplemental fees. Additionally, Moran recognized that the RARA executed at the commencement of the representation prohibited payment directly from Howard unless otherwise ordered.

The bankruptcy court found that Moran's supplemental fees and costs were both necessary and reasonable but determined that Howard's discharge precluded payment of Moran's supplemental fees and expenses. The bankruptcy court explained that, under § 503(b), fees awarded pursuant to § 330(a), like Moran's, are administrative expenses and are entitled to priority treatment as specified in § 507(a)(2) and in the confirmed plan. "Because postconfirmation attorneys' fees are treated as administrative expenses, the plan's provision for payment of administrative expenses includes payment of those fees." Order Granting in Part and Denying in Part Supplemental Application for Compensation (Feb. 9, 2017) at p. 5. Therefore, the court concluded, as administrative expenses provided for in the Amended Plan, Moran's supplemental fees and costs were discharged regardless of whether they actually were paid. The bankruptcy court allowed Moran's supplemental fees and costs but denied the request for authorization to collect them directly from Howard. Howard timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C.

7

§§ 1334 and 157(b)(2)(A), and we have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court commit reversible error when it determined that Moran's supplemental fees and costs were administrative expenses, had been discharged, and could not be collected directly from Howard?

**STANDARD OF REVIEW**

Howard's issue on appeal requires us to construe the Code sections and Rules governing compensation of chapter 13 debtors' counsel. The task of construing statutes and Rules is subject to the de novo standard of review. Litton Loan Serv'g, LP v. Garvida (In re Garvida), 347 B.R. 697, 703 (9th Cir. BAP 2006).

When we apply the de novo standard, we consider the matter anew, without any deference to the bankruptcy court's decision. Calderon v. Lang (In re Calderon), 507 B.R. 724, 728 (9th Cir. BAP 2014).

**DISCUSSION**

**A. Moran's Allowed Fees Were Administrative Expenses.**

Howard argues that her attorneys' fees were not administrative expenses, payment of which was tied to the chapter 13 plan. She contends that Moran's fees incurred after completion of her chapter 13 plan were not connected with a debtor's case and, therefore, fell outside the purview of administrative expenses as that term is defined in the Code.

The distinction Howard draws is a potentially significant one.

When a confirmed chapter 13 plan "provides for" payment of

8

administrative expenses through the plan, the debtors' discharge includes their counsel's postconfirmation attorneys' fees whether or not they actually were paid. See In re Hanson, 223 B.R. 775, 778 & n.8 (Bankr. D. Or. 1998). This is so because all fees awarded to a chapter 13 debtor's counsel under § 330(a)(4)(B) qualify as administrative expense claims pursuant to § 503(b)(2). In turn, administrative expenses are entitled to priority treatment in chapter 13 plans and must be paid in full during the course of the plan, unless the claimant agrees to an alternate treatment. §§ 507(a)(2), 1322(a)(2); see also Wolff v. Johnson (In re Johnson), 344 B.R. 104, 107 (9th Cir. BAP 2006); Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 294.1, at ¶ [4] (Sec. Rev. June 17, 2004).

Because most chapter 13 plans provide for payment of all administrative expenses through the plan, such fees can be discharged upon completion of the plan even if such fees were not actually paid. In re Hanson, 223 B.R. at 778-79. Accord, In re Rios, 2006 WL 6811006 at *4 ("an administrative claim 'provided for' in a chapter 13 plan is discharged upon entry of discharge."); In re Cripps, 549 B.R. 836, 852 (Bankr. W.D. Mich. 2016). In this instance, the RARA further compels such treatment as it requires payment of attorneys' fees through the plan and precludes direct payment of any fees by the debtor, other than the initial retainer, absent a court order to the contrary. Boone v. Ryder (In re Ryder), 358 B.R. 794, 798-99 (Bankr. N.D. Cal. 2005).

In light of the above, Howard does not challenge the effect of her discharge on unpaid administrative expenses. Instead, she

9

contends that the fees for Moran's services provided after completion of the plan fall beyond the scope of administrative expenses. Because those fees do not qualify as administrative expenses, Howard argues, the discharge does not affect her liability for those fees.

Neither Howard, nor this court, has found any case that specifically addresses her argument. Howard suggests that this is because the few cases to consider the effect of the discharge on postconfirmation chapter 13 attorneys' fees involve fees incurred before completion of the plan. She argues that because the dispute with the secured creditor arose after the 60th month and completion of her plan, such services could not have been in furtherance of her plan.

Howard's focus on the plan is too narrow. Moran's fees remained subject to bankruptcy court approval and constituted administrative expenses so long as such fees fell within the broad scope of § 330(a)(4)(B), which applies to all chapter 13 debtors' counsels' fees incurred while "representing the interests of the debtor in connection with the bankruptcy case."[8] Courts have broadly construed § 330(a)(4)(B) to facilitate chapter 13 debtors' efforts to obtain and use competent legal

---

[8] Section 330(a)(4)(B) provides in full:

In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

10

counsel to resolve issues arising in their chapter 13 cases that otherwise might impede either their voluntary repayment of their creditors or their successful financial rehabilitation and fresh start. See In re Busetta-Silvia, 314 B.R. 218, 224 n.30 (10th Cir. BAP 2004); In re Davis, 2009 WL 4856199, at *3-4 (Bankr. S.D. Miss. 2009) (citing 3 Collier on Bankruptcy ¶ 330.04[1][b] (15th ed. rev. 2009)).

We recognize that Moran's services did not relate to Howard's **ongoing** performance under the plan because she already had completed her regular plan payments by the time Moran rendered her services. Nonetheless, the services were necessary to ensure that PNC Bank did not, after the fact, undermine Howard's right under § 1322(b)(5) to cure any arrears and maintain her contractual payment obligations over the course of her plan and, ultimately, to obtain the fresh start she was entitled to by virtue of having successfully completed her plan. See In re Tatum, 2017 WL 3311219, at *2 (Bankr. D. N.J. May 15, 2017); In re Gravel, 556 B.R. 561, 568-69 (Bankr. D. Vt. 2016). As explained in Gravel:

> Bankruptcy Rule 3002.1 . . . was promulgated in 2011, in response to a growing problem that had arisen in Chapter 13 cases throughout the country: debtors who had successfully completed their Chapter 13 plans, and paid all of their mortgage arrears and post-petition installment payments, would find themselves in renewed foreclosure proceedings due to undisclosed and unpaid post-petition charges and fees — a result clearly at odds with a debtor's right to a fresh start. To promote further transparency and more emphatically safeguard debtors' fresh starts, the Rule requires the holder of a claim secured by a Chapter 13 debtor's principal residence to file a detailed notice setting forth all post-petition fees, expenses, and charges it seeks to recover from the debtor.

Id. at 568.

11

In short, all of the procedures set forth in Rule 3002.1, and any litigation arising therefrom, are inextricably intertwined with the chapter 13 debtor's efforts to pay her creditors over the course of her plan and to achieve a fresh start upon the successful completion of her plan payments. In this very real sense, the Rule 3002.1 procedures are undoubtedly connected to the debtor's bankruptcy case.

Howard attempts to analogize Moran's services to fees incurred to enforce a debtor's discharge, but she cites no authority to support her contention that fees incurred after discharge necessarily are not expenses of administration. The Code indicates to the contrary because the controlling statute contains no such categorical temporal limitation. See § 503(b).[9] Similarly, the Rules do not fix any specific bar date for filing administrative expense claims. Instead, the Rules leave it to the bankruptcy courts to determine the timeliness of requests for allowance and payment of administrative expense claims. See Deere Credit, Inc. v. Wiley (In re Wiley), 2014 WL 294330, at *4 (Bankr. S.D. Ga. Jan. 24, 2014) (citing 4 Collier on Bankruptcy ¶ 503.02 (16th ed. rev. Sept. 2013)).

For the reasons set forth above, Moran's argument lacks merit. The postconfirmation fees Howard incurred at the end of her chapter 13 case were administrative expenses that were discharged pursuant to Howard's chapter 13 plan.

---

[9] The wisdom of this approach is evident. For example, if a chapter 7 case was reopened to administer newly discovered assets, the trustee and her duly retained professionals may request allowance and payment of their reasonable fees and expenses as administrative expenses.

12

**B.  Means of Repayment.**

Howard also argues that if her counsel's fees are considered administrative expenses, she is left without a remedy as she could not modify her plan after completion of her payments under the plan. § 1329(a).  We are not unsympathetic to Moran's situation.  Both the chapter 13 trustee and the bankruptcy court acknowledged the benefit of the services she provided to Howard. We do not agree, however, that there was no means to pay Moran's administrative expenses incurred after the completion of Howard's plan.  The plan still required payment of all administrative expenses.  Although the completion of the plan payments and term precluded modification of the plan, it did not necessarily foreclose the debtor from making additional payments on outstanding plan obligations if required.  See In re Hill, 374 B.R. 745, 750 (Bankr. S.D. Cal. 2007).  Similarly, while the RARA precluded Moran from receiving direct payments from the debtor, that prohibition stands unless otherwise ordered by the court. Courts may allow debtors to make payments directly to counsel on fees excepted from the discharge.  See In re Johnson, 344 B.R. at 107.  Unfortunately, entry of discharge foreclosed these options.

Even after entry of discharge, nothing prevents Howard from voluntarily repaying Moran's approved fees.  § 524(f).  While Howard is no longer legally obligated to repay Moran's awarded supplemental fees, this option always has been available and continues to be available.  In re Conner, 559 B.R. 526, 532 n.8 (Bankr. D. N. M. 2016); In re Cripps, 549 B.R. at 863 n.31.

We recognize that Moran having to rely upon Howard to voluntarily repay the debt for the critical, effective and

13

beneficial services Moran provided is the least desirable option available to Moran because it leaves her with no control over, or legal right to, payment. Nonetheless, no matter how imperfect, it remains an option still available to ameliorate the potential harshness of the result here.

## CONCLUSION

This case poignantly demonstrates that counsel must be particularly mindful of compensation issues relating to their fees when unanticipated situations arise requiring their services after debtors complete their regular plan payments.

Because Howard's plan provided for payment of administrative expenses, including attorneys' fees, through regular plan payments, and because Moran did not arrange for and obtain compensation by any alternate means before Howard received her discharge, Moran's fees were discharged administrative expenses. We AFFIRM.